All right, Mr. Creech, Mr. Creech, pleased to hear from you. May it please the Court. My name is Ashley White Creech and I'm here on behalf of the Empire Fire and Marine Insuran All right, Mr. Creech, Mr. Creech, pleased to hear from you. My name is Ashley In terms of the premium paid for it, it says $1 million or up to $1 million. It provides $1 million. I don't see the words up to when I'm looking at the declaration page. The premium that the declaration page says that the liability premium is per the certificate. If we look at the certificate, it doesn't mention uninsured or underinsured motorist coverage, but it does say that the certificate does not affirmatively nor negatively amend, extend, or alter the coverage provided by the policy. Again, provided by the declaration page, which is part of the policy. Next, moving on to common policies conditions, there is an exclusion in the policy that excludes liability arising out of or benefits payable under any state. This exclusion applies to uninsured motorist benefits arising by virtue of state law. Again, as I've just explained, the coverage granted here is per the declarations page, not by virtue of state law. As I get to a little later, it's our position that state law does require those benefits and that this is an improper exclusion. But for purposes of whether or not the contract is ambiguous, the exclusion is by its own terms. Interpreting an insurance policy, is the declarations page part of that policy or is it just sort of a summary which is not actually an operative part of the policy itself? Well, certainly in this case, and it's on the joint appendix on page 312, the defendants defined the policy as including the declaration page. So it is, in this case, a part of the policy that grants uninsured motorist coverage and the plaintiff did present expert testimony as well that the declaration page, it is in practice a part of the policy. What do you do with the words per certificate? Well, we go to the certificate and that's just talking about the premium paid and the certificate is silent as to it. But what the certificate does say is that it does not affect the coverage provided by the policy. It neither affirmatively nor negatively amends, extends or altered the coverage provided by the policy named within. So the certificate has no effect on the underlying business. Would the certificate be what the insurer gave to R&K? Excuse me? Would the certificate be what the insurer gave to the Charlotte Harley dealership? Certainly they would have had the certificate in the... Is that the certificate in your view that's referenced? Yes, Your Honor. And that certificate doesn't mention U.M. coverage? It does not mention U.M. coverage, however it does say that it does not affect the underlying coverage offered by the policy. And the underlying coverage offered by the policy does, by the policy's own terms, include uninsured motorist coverage. We then go to the North Carolina endorsement. There's an endorsement for... This is an excess policy, isn't it? No, Your Honor. It's an automotive liability policy and I guess they certainly term it as an excess policy, however it provides liability coverage for operating a motor vehicle. My understanding in a review of North Carolina cases looking at excess... Just as a general matter, would an excess policy be likely to provide additional U.M. coverage as well as additional personal liability protection? Certainly. If a motorcycle ran over a pedestrian or what have you, is it normally the function of an excess policy to add to U.M. coverage? No, generally speaking, that is not the normal function of an excess policy. However, in this case, what our burden is to present a reasonable interpretation of the contract based on the contract's own terms. Whether or not they intended for it to provide uninsured motor... isn't a part of that analysis. Certainly, I don't think that they intended for the policy to provide it, but they, in fact, drafted a policy that did provide it. It's a 702-page policy. The North Carolina endorsement at issue does not contain any reference to un- or underinsured motorist coverage. Your position is that the master policy by itself includes this $1 million in cover, right? Well, I think what's properly before this court is the policy applicable in North Carolina, which does. I think that there are five states which perhaps the policy may make sense, and those are the five states that offer $1 million in uninsured motorist coverage in the state endorsements because that's consistent with the uninsured motorist coverage offered and provided by the declaration page. But if the master policy already provided that coverage, then what work do these endorsements do? I think in this case, the endorsement isn't necessary for us to reach the result that it provides uninsured motorist coverage. You have to read the policy as a whole. You said that yourself. You can't pick and choose different components of the contract because it fits your interpretation. So if these endorsements do no work because, as you say, the master policy already includes $1 million in uninsured coverage, aren't you reading the endorsements completely out of the contract? We're not. When you look at the individual state endorsements, they speak to you essentially how to implement the contract. Again, the fact that the North Carolina endorsement doesn't necessarily address implementation of claiming uninsured or underinsured motorist coverage may be evidence of the defendant's intent not to provide that coverage. However, it does not go to whether or not Mr. Camp's interpretation of the policy is reasonable. Even without an implementation provision, the contract is sufficiently definite for Mr. Camp to make a claim for uninsured motorist benefits. Additionally, this is a 702-page insurance contract. Someone spent a lot of time and certainly wouldn't take that much more effort to do an individual declaration page for each state and to clarify the uninsured, underinsured motorist coverage offered in the individual state's endorsements. Again, the North Carolina endorsement is silent as to this issue. What we do have is an affirmative grant of coverage in the policy's declaration page, a certificate which doesn't add to or take away the coverage issued by the declaration page. Then we have an exclusion that by its own terms, giving the words their plain and ordinary interpretation, doesn't apply. And the North Carolina endorsement... Why wouldn't it apply? The exclusion says it excludes liability arising out of or in any state. The district court found that persuasive. Why, in your view, is it not? It wouldn't apply for two reasons. First, as I've already explained, because this is uninsured motorist coverage arising by virtue of the contract itself. Secondly, the North Carolina Motor Vehicle Financial Responsibility Act requires all motor vehicle liability policies to offer uninsured motorist coverage in equal amounts to the liability limits up to a million dollars. Here, this is by the policy's own definition a motor vehicle liability policy. Certainly, they say it's an excess motor vehicle liability policy, but the act does not make that distinction. It's all motor vehicle liability policies. Well, the act doesn't, but the cases do. Vasquez makes that distinction. Vasquez involves an umbrella policy, so it's not a motor vehicle policy that was at issue in Vasquez. There is a million dollar liability policy, and then there was an additional $20 million commercial umbrella policy. Here, we're dealing with a policy that provides... Essentially, it's $970,000 in liability coverage if Mr. Camp were to have injured someone else while he was operating the motor vehicle. Under North Carolina law, that statute, which should be liberally construed in favor of coverage because we want to protect people from injury by uninsured drivers, Mr. Camp was responsible. He made the decision to purchase... Suppose we disagree with you on the effect of the exclusion. As between the exclusion provision and the declarations page, the question is which controls? Now, would you go to the underlying policy because terms and declarations pages tend to be somewhat cryptic, whereas underlying policies have more of an explanation. So I think the district court put dispositive weight on the underlying policies, which we hope, and in many instances are, under the regulation of a state insurance commissioner, which says what? Because we know people don't read all these policies from beginning to end, or at least they do more power to them, but most don't. So you're relying, in a sense, on the insurance commissions as to what is and isn't permissible and statutes. And if there's a conflict between the declarations page and that underlying provision, which should control? Well, Your Honor, my time has expired, if I may briefly answer your question. My review of the case law shows that in North Carolina, if there is a conflict within the policy, there's not necessarily one that controls over the other. The relevant inquiry is simply whether or not there is susceptible to more than one interpretation. Yeah, I understand that insured gets the benefit of ambiguity, but I'm wondering whether that same principle applies. I know it applies within the contract itself or when the language of a particular provision is susceptible legitimately to several interpretations. I was just wondering here whether it did or whether the operative document really is the underlying policy. Well, even if the declaration page of this court finds it's not part of the underlying policy, the exclusion is still not clear. Our interpretation is still reasonable here by the plain language of the exclusion, which only applies to uninsured motorist coverage arising by virtue of state statutory or common law. Thank you. Anybody have any questions? Thank you. All right, Mr. Rennie, pleased to hear from you, sir. Thank you. Your Honors, my name is David Rennie. I'm here on behalf of Empire Fire Insurance Company. In April of 2011, Rolf Camp purchased two different policies of insurance, one a minimum limit policy and one an excess policy to cover him for his use of a motorcycle rented from Harley Davidson in Charlotte. The first policy was a minimum limit policy that met the statutory requirements in the state of North Carolina for an offer of liability and U.M. coverage, which is really the only relevant thing here. And pursuant to that, Empire paid to Mr. Camp $30,000 of uninsured motorist coverage when he was injured by an uninsured driver. So that policy is not at issue here. The second I think as Judge Diaz Just looking at it, you know, it says uninsured motorist coverage in the left-hand column and then you go over and it says $1 million and then, you know, there's a phrase per certificate, which I don't know that somebody would know what that was. No, I think under the totality of the circumstances it would not. You could look at a declarations page and you could see that million dollars, but you're also obligated as the reader of the document to see what else is on that page. And that is what Judge Anderson pointed to is the myriad of other things that were available. On the declarations page itself? On the declarations page, yes, sir. It says per cert and it refers the reader to the certification of insurance coverage. It also says The certification, what certification? The certification that your client gave to the Harley dealership in Charlotte? Yes, sir. The certification of coverage How is the plaintiff supposed to know that? Well, the plaintiff has on the rental form itself, the plaintiff certifies that he has in fact been provided with that. When he initials that he wants supplemental liability coverage below that, he has certified or the renter himself says, I have gotten a copy of that. Well, I get your point that the question I asked your opposing counsel asked that you're supposed to look at the entire policy, not just in isolation. But I guess the counter to that is that this takes, I mean there are a number of twists and turns to get to the answer in this case that Judge Anderson methodically got to in his opinion. But of course he's a lawyer, a very smart judge. Why should a reasonable insured have to go through these machinations if at first blush you look at the declaration and it says $1 million in uninsured coverage? Why wouldn't a reasonable person, a layperson, understand that to mean that he had in fact purchased full coverage? Well, let me respond to that by backing up a little bit. There are levels of insurance here. There is ultimately an insurance company who through a broker offers coverage to Harley Davidson in Chicago who is really the named insured. And then other dealerships become additional insured under the policy. The rider in this case, Mr. Camp, becomes a permissive additional insured when he rents a policy. There's no requirement in North Carolina or any other law, any other state that I'm aware of, and we have looked, that requires that a renter of a car or a motorcycle or any other type of equipment is required to be provided with the master policy and then in this case supplemental policy and those types of things. As opposed to a situation where you or I may go through our local state farm nationwide or all state agent to take out coverage, then the agent is required to talk to us to make specific offers to us. I don't understand. I mean, I share some of the concerns that Judge Diaz has about somebody looking at that declaration page and thinking they had $1 million of uninsured motorist coverage. Why can't the insurer just say in the declaration page, this policy does not include uninsured motorist coverage or does not provide additional uninsured motorist coverage? I mean, what is the bar to just stating in plain English something that would help a purchaser of this insurance to understand? There are always things that an insurer can say in a document. In this case, the insurer said that there are other forms and it refers the reader to the certification insurance page as well. Judge Diaz points out that it requires the insurer to pursue somewhat of a tortured trail and I do understand that few people bother to read the whole policy that they purchased. They don't have time for it. But on the other hand, when you do provide them with the declarations page, it purports to be a clear summary of the terms of the policy as an aid to a layperson trying to understand what exactly they're purchasing. I would be befuddled by that. I mean, I'm trying to say if I looked at that declarations page, I might, if I had time, inquire as to what per certificate means. But just looking at it, I think I had a million dollars of uninsured loaners covered. Well, again, the declarations page refers the person somewhere else, as I was saying. To the certificate. Yes, sir. To the certificate. It also mentions other forms. The insurer or the renter in this case also. How many forms does the insurer have to put together to arrive at the correct conclusion? I mean, this individual is not a lawyer. And even lawyers, it would be tricky, because as I understand it, he purchased the insurance shortly before he went out for a ride. Yes, sir. So this is not a situation where an insurer gets all these policies. This is a situation where Empire is insuring a national Harley Davidson, for lack of a better phrase, who then has additional insurers under the policy. This is not the situation where an every jot and tittle of a policy as required by a state law when your state farm agent is offering to you coverage. That's not this scenario. This policy is written to cover a nationwide chain of outlets. The outlet itself is not the owner of the policy. They are an additional insurer under the policy. Neither is the person who rents the vehicle. They are an insured permissive user. But they're not getting all this stuff, nor would they get this stuff, nor would they want to get this stuff. Well, that may be true as a general matter. The point is, I mean, the question is whether this declarations page, which is the one thing somebody would look at, is affirmatively misleading. I don't think it is. And the law, Your Honor, in North Carolina is very clear that a declarations page is not the thing that gives coverage. In this case, the thing that gives coverage is the policy itself. Other documents may come into play, for instance, exclusions of coverage. Then why have the declarations page? It's to provide just a guide of what may or may not be in the policy. What do you mean what may or may not be in the policy? Well, in this case, at the top it has commercial rental liability. And there is no commercial liability rental here. There's not a reference to it. So that no one could say that there's commercial liability rental coverage on this policy. I mean, there must be some purpose to the declarations page. It's what you hand out to them. And there must be some obligation on your part to be up front in terms of what the declarations page accurately summarizes. Well, the interesting The underlying policy. The rental premium, you know, if somebody wants to take out a million dollars. Well, they could not. And that's the point of this case. In the state of North Carolina, Mr. Comp could not get U.M. coverage. He could never get U.M. coverage under this policy, no matter what. If he had walked in, which he did not. Why is that? Because this policy doesn't afford U.M. coverage. Because it's an excess policy? Yes, sir. Because it's an excess policy. Does he know that? I don't know what Mr. Comp knows. But in this case, he's gotten two policies. Does it matter whether he knows it or not? Does he know the difference? Does he know the fact that an excess policy doesn't generally afford U.M. coverage? Does he know that? I don't know if Mr. Comp knows that or not. He knows he has one policy that is a minimum limits policy and what coverage it provides. And then there is this policy, which is an does it not require that it includes U.M. coverage? It doesn't prohibit it, does it? Sir? Does it prohibit it? Oh, they could. Any insurer can write into its policies whatever it chooses. Whatever coverage is the insurer wants? Yes, sir. This is what is the National Harley willing to provide to potential renters in all of the states of the United States. It has picked out six states in particular where it will offer this coverage. But that is only because it is statutorily mandated in those states. Harley has chosen not to offer this U.M. coverage in any other state where it's not required. That may be fine and good. The problem is the doggone declarations page. Everything you just said to us, you could say, you know, there's no North Carolina law does not mandate additional uninsured motorist coverage and we don't provide it. Instead of writing one million dollars, right by the uninsured motorist column on the declarations page. And, you know, I don't have any problem with what North Carolina, obviously I don't layman and, you know, there's just an absence of candor. Well, I don't think it's an absence of candor at all. The insured, in this case, if they look at this, is referred to other documents, too, an insurer. Can't receive. Ma'am? What documents can't receive? The only thing that is known that he received is a certificate where he initials stating that he did, in fact, receive that. I don't believe that he ever got the declaration page itself. Now, what I, in this case, though, what we're talking about and what we've been talking about up to this point is ambiguity. That, to me, is step two of this process. Step one is, does North Carolina require, first of all, that this coverage be included? Second of all, if it does, then it would require an offer. But in this case, it doesn't require the coverage at all in the state of North Carolina in an excess policy. And because it doesn't require that, there is no offer at all. Empire concedes in this case. There is not an offer of uninsured motorist coverage. There was never a charge for uninsured motorist coverage. So that's step one. First thing you have to do before you can even get to whether an offer was ambiguous is determine whether an offer was ever required in the first place. And in this case, Empire concedes it was not offered because it was not required. And that then closes, really, in my mind, the book on this. There is no requirement of an offer. There is no requirement of coverage. Whether it was required and whether you appeared to offer it are two different things. No, sir. In this case, when it says, when we're looking at the deck page, it refers somebody to something else. But then you're getting right back to whether or not the policy was ambiguous. I don't understand your requirements argument. It's true you're not required to offer anything. But if a reasonable insured perceived that you were, in fact, offering. I don't think that a reasonable insured would because of the very things that were cited by Judge Anderson. First of all, the policy itself says we do not insure any liability under the uninsured or underinsured motorist law of any state of the United States. The North Carolina law does not create coverage. R&K can only sell what it is authorized to sell, R&K being the local dealership. It can't sell more than it has to sell. Mr. Comp claims that he asked for full coverage. What he was given was the full coverage that was available by R&K to sell to him, which did not include uninsured motorist coverage. So for the very reasons cited by Judge Anderson in his opinion, seven of them, the way I counted it, there was no way that a reasonable person would presume under the totality of the circumstances that they had uninsured motorist coverage here. You can't take one you have to interpret everything together and you can't take one piece of paper out of this and say it has primacy above all other documents available in this case. You have to read everything together. The problem is that one page is the one page somebody would be most likely to read. Not in this case. Why? In this case they don't get the declaration, they've got the certification of coverage which doesn't charge a premium for uninsured motorist coverage, doesn't take it or give it away. He was given the declaration's page, wasn't he? I don't believe he was given the declaration's page. I think what he has is his rental agreement, the brochure that he took that he admitted that he did not read, and the certificate of coverage page, which never mentions uninsured motorist coverage. So he was never afforded the declaration's page? My understanding is he does not have the declaration's page. So it was never handed to him or? Not as far as I know. There's no evidence in this case that he got the declaration's page. What he says that he alleged that in his complaint. Ma'am? That's not a basis for his. Well, the complaint actually changed. The original complaint simply said that under North Carolina law he should have been offered UM coverage. In discovery the declaration's page was provided and then the argument became about the declaration's page. So it wasn't alleged in the complaint. Was the complaint amended? No, ma'am. I don't think He relied on the declaration's page? No, ma'am. Does the complaint say that he relied on the declaration's page? No, ma'am. What I had mentioned was that Judge Anderson had specifically gone into the issue of what a reasonable person, and I'm not sure the reasonable person standard had been argued in the case until this appeal, but the problem, what Judge Anderson found was that there were at least seven different things that said when you read this in it, in the totality, you can't just single out, you can't create an ambiguity where none exists by singling out a single phrase or a single sentence. In an insurance case do we generally require reliance? I'm sorry, I don't understand. You buy the policy, you get what the policy offers. Is reliance something that has to be pleaded before someone can take coverage? Again, I'm sorry, I don't quite understand. As far as pleading reliance on the agent or what they're told by, in this case not a particular policy, it's the question of whether the coverage is there or whether it's not there. It wouldn't be a question of whether they alleged reliance, would it? I suppose that there are scenarios where an insured could claim that they relied on a broker to put proper coverage in place. But in this case, no such thing has been alleged. What Mr. Comp has said in his sworn testimony is I told them to give me full coverage, which they gave him. They gave him everything that they had to give him. And in this case the policy itself says we don't provide uninsured motorist coverage. The certificate which he acknowledges having received says nothing about you're getting UM coverage, we're offering it to you. The fact that it's not discussed can't be a basis for saying it must therefore be on the policy because it wasn't mentioned. Well, does that mean everything that's possibly insurable that wasn't mentioned is somehow covered under this policy? No, that wouldn't make any sense. All I was suggesting to you is normally under insurance law, if the coverage is there, it's there, it doesn't require reliance because for reasons we know, people don't read these things. As a general rule, I would say yes sir, they do not read them. And you're right, either the coverage is there or it's not. And in this case, it's not there and nor was there a requirement that it be there. The coverage is there from the declarations page. Well, again, as we've mentioned in our brief, a declarations page in and of itself can't create coverage under North Carolina law, which is the controlling law. We're going round and round. A bit, yes sir. Thank you. Thank you. Ms. Creech? Ms. Creech, wouldn't it, if it was going to provide uninsured motorist coverage, wouldn't it likely be spelled out? That's an awfully, the declarations page is an awfully bare-boned document. Normally when coverage of that magnitude is provided, wouldn't it be spelled out somewhere in a document like a policy or a certificate or somewhere else? Well, the declaration page, first in this case, is by the defendant's own definition a part of the policy. And yes. He has told us repeatedly under North Carolina law it's not. Is that wrong? I have not seen any North Carolina case that says a declaration page is not a part of a policy. So you say that is wrong? That is incorrect, yes. There are some North Carolina cases that have construed in favor of policy language, not necessarily over the coverage drafted in the declaration page, but applying just normal contract interpretation. I think you may be right on that. I don't think there are North Carolina cases that say a declaration page is not part of a policy. In fact, I looked at them and they don't come out and say that. They just don't. That's correct. The declaration page is a part of this policy. Certainly, I think if I were drafting this policy, it might be beneficial to explain the coverage, perhaps in the individual state endorsement. But that was not done when we look at the North Carolina endorsement for this policy. So the point is made repeatedly that North Carolina law didn't require the insurer to offer this. Is that germane in your view? I think if the policy is, if this court finds the policy is ambiguous, no. However, even if this court finds that the policy unambiguously excluded uninsured motorist benefits, the summary judgment grant by the district court still should be reversed because North Carolina law does, in fact, require uninsured motorist coverage for all motor vehicle liability policies. Well, we're talking about amounts. That's correct. And by virtue of the statute itself, it says that the liability insurance that should be provided is, the uninsured motorist coverage that should be provided is equal to the liability coverage afforded under the policy, which in this case would be $970,000. And that's, I think, makes sense just as a practical matter. Typically, you pay more for higher limits of liability insurance, and so just as a policy issue, you would want to have that protection given back to you. So, if I'm paying for a million dollars in liability, I get that coverage in uninsured motorist benefits. But here, we have a debt page that grants the policy an exclusion that by its own terms does not take away that policy. A North Carolina endorsement, which also does not address in any way or underinsured motorist coverage. There's no policy language in the policy saying, hey, if you're in North Carolina, you don't get these benefits. Even if it was in the North Carolina endorsement, we would still be arguing that that's an ambiguous policy because it conflicts with the declaration page. But here, we're not trying to choose between competing policy provisions. There's a grant of coverage, and it's silent throughout the remainder of the policy. Mr. Kant's interpretation of the policy, and it's not whether or not he understood at the time of purchase. He paid for this coverage. He entered into a contract, and when you review the contract, he's provided a reasonable interpretation of that contract, which provides one million dollars in uninsured motorist coverage. The contract's ambiguous because he has a reasonable interpretation. That ambiguity, under North Carolina law, must be construed in favor of providing him for that coverage. Even if this court finds it unambiguous, the coverage is required under the North Carolina Motor Vehicle Financial Responsibility Act because he purchased a motor vehicle liability policy that provided $970,000 in liability coverage. So today, we ask that you reverse the district court's grant of summary judgment against Mr. Kant. Thank you. We thank you. Come down and greet the attorneys, and then proceed into our final case.
judges: J. Harvie Wilkinson III, Diana Gribbon Motz, Albert Diaz